NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0113n.06

Case No. 20-3163

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 02, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| BENJAMIN ROSS, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: GILMAN, GIBBONS, and SUTTON, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** In June 2019, Benjamin Ross was indicted on one count of attempted possession with the intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Ross moved to suppress the evidence obtained during the traffic stop that led to his arrest, but the district court denied the motion after a suppression hearing.

In October 2019, Ross pleaded guilty to the charged offense. The court subsequently sentenced Ross to 120 months in prison, which was a 15-month upward variance from the Guidelines range of 84 to 105 months of imprisonment. Ross now appeals, claiming that the district court erred in (1) denying his motion to suppress, and (2) imposing the upward variance. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In May 2019, in Youngstown, Ohio, Ohio State Highway Patrol Sergeant Alan Dunbar observed a BMW sedan pull out in front of him. He had been waiting for the car to leave the house because other officers suspected its driver (Ross) of drug activity. Dunbar noticed that the car had heavily tinted passenger windows and, upon following the car, watched Ross make a left-hand turn without signaling in advance. This caused Dunbar to activate his siren, pull over the BMW sedan, and inform Ross of the traffic violations that Dunbar had observed: the dark window tint and the delayed use of a turn signal. Upon noticing that Ross seemed nervous and was avoiding eye contact, Dunbar requested that Ross step out of the car**.** When Ross complied, Dunbar conducted a consensual pat-down, which revealed no weapons or contraband.

Sergeant Dunbar was working at the time in tandem with a canine unit, led by Trooper James Baker. Baker arrived while Dunbar was still interacting with Ross, and the drug-detection dog alerted by the rear door on the driver's side of the BMW. Due to the alert, the officers searched the car and found a child's toy train perched on the back seat. Inside the toy was a vacuum-sealed bag containing several hundred blue pills that were later determined to contain 117 grams of fentanyl.

Ross moved to suppress the evidence found during the vehicle search, arguing that Sergeant Dunbar had neither probable cause nor reasonable suspicion to pull him over. The district court denied the motion. Citing Dunbar's testimony and dash-camera footage, the court held that Dunbar had probable cause to believe that Ross had committed the two Ohio traffic violations in question.

Ross pleaded guilty soon after, but he reserved the right to appeal the denial of his motion to suppress. The Presentence Report, authored by Ross's probation officer, recommended an

upward variance of 15 months from the Guidelines range in order to provide just punishment, protect the public, and reflect the seriousness of the offense. Notice of a possible upward variance was filed by the district court a day later.

At Ross's sentencing hearing in February 2020, the district court adopted the 15-month upward variance and sentenced Ross to 120 months in prison. The court noted, among other things, Ross's lengthy criminal history, his supervised-release status when he committed the instant offense, the proximity in time of the offense to his recent release from prison, his drug-related behavior while in custody, and the seriousness of the offense.

When the district court asked whether either party had any objections to the imposed sentence, Ross neither objected nor asked the court to further explain its reasoning. Ross now appeals, arguing again that Sergeant Dunbar's initial stop of his car was improper, and contending for the first time that the court failed to adequately explain its reasons for varying upward from the Guidelines range when imposing the 120-month sentence. We address each of Ross's arguments in turn.

## II. ANALYSIS

### A.    Motion to suppress

#### 1. *Standard of review*

When a defendant appeals the denial of a motion to suppress evidence, we review the district court's legal conclusions de novo, but set aside the court's factual findings only if they are clearly erroneous. *United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015). A factual finding is clearly erroneous when an appellate court, upon reviewing the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir. 1999). Because the district court denied Ross's motion to suppress, all

evidence is reviewed in the light most favorable to the government. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009).

### 2. *Discussion*

"In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). Ross argues that Sergeant Dunbar had neither probable cause nor reasonable suspicion to pull him over. He first contends that Dunbar could not have seen the window tint prior to deciding to pull him over because of both the distance between the two cars and the angle of Dunbar's view at the time in question. Second, he argues that the dash-cam footage reveals that he in fact used his signal in a manner consistent with Ohio law.

As to the first argument, we have held that an officer's traffic stop of an individual for unlawful window tinting does not run afoul of the Fourth Amendment where the officer has "substantial experience enforcing this traffic regulation" and is "familiar[ ] with window tinting." *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (affirming the denial of a motion to suppress); *see also United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020) (same). Ohio law requires that tinting on certain windows allow at least 50 percent of the light to pass through. Ohio Rev. Code § 4513.241; Ohio Admin. Code § 4501-41-03(A)(3).

The issue here is that the district court erred twice in its written analysis. First, it incorrectly recited the law. The court stated that Section 4513.241 of the Ohio Revised Code "makes it unlawful to use tinted glass in 'windshields, side windows, sidewings, and rear windows.'" But Ohio law does not place restrictions on the tint of a rear-side window or the back window. *See* Ohio Rev. Code 4513.241 (directing the Director of Public Safety to adopt regulations governing window tinting); Ohio Admin. Code 4501-41-03(A)(4) (adopting regulations that exempt any

windows "not otherwise listed in paragraphs (A)(1) through (A)(3) or (A)(5) of this rule"); *id.* at (A)(1)–(A)(3), (A)(5) (not listing rear-side window or back window). As an aside, we note that if the back window is tinted to allow "less than fifty per cent plus or minus three per cent" light transmittance, then "outside left and right rear view mirrors are required." *See* Ohio Admin. Code 4501-41-03(A)(4). But that portion of the regulation is not at issue in this case because Ross's car had outside rear-view mirrors.

Second, the district court found that Dunbar had probable cause to stop Ross because "Dunbar had ample opportunity to observe and evaluate the rear side window on the driver's side of the vehicle as well as the back window of the vehicle." The problem with the court's finding is that Ohio law permits such windows to be tinted, to say nothing of the fact Dunbar explicitly testified that the back window was not tinted. Moreover, the government argued to the court that Dunbar had stopped Ross due to the tinting on the passenger-side windows—not the driver's rear-side window or back window.

In apparent recognition of the district court's errors, the government argues again that Dunbar had probable cause to stop Ross because of the unlawful tint on the front-passenger window. Dunbar indeed testified that he noticed the tint on the front-passenger window before pulling over Ross, and the dash-cam footage reveals that Dunbar could likely see the front-passenger window before activating his siren. But the government's plausible argument does not ameliorate the problems created by the district court's misstatement of the facts and law in its written opinion. We need not belabor this point further, however, because we find no error with the district court's finding regarding the turn-signal violation.

Turning to that argument, Ohio law provides: "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet

traveled by the vehicle . . . before turning." Ohio Rev. Code § 4511.39(A). The district court concluded that, based on both Sergeant Dunbar's testimony as well as the dash-cam footage, Dunbar had observed Ross commit a turn-signal violation. Upon review of the dash-cam footage, we cannot discern precisely when Ross initiated his turn signal. But that alone does not leave us with a "definite and firm conviction that a mistake" was committed by the district court in reaching its factual finding, *see Navarro–Camacho,* 186 F.3d at 705, especially because the court also considered Dunbar's testimony. Indeed, the court made its finding only after hearing counsel spar back and forth on the issue. Ross thus fails to show that the district court clearly erred in its finding regarding the turn-signal violation.

## B.     Sentencing

### 1. *Standard of review*

Ross next challenges the procedural reasonableness of the district court's sentencing decision. We typically review sentencing decisions under the abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 56 (2007). But where, as here, a defendant fails to contemporaneously object to the district court's sentencing calculation, we review a claim of procedural unreasonableness under the more deferential plain-error standard. *United States v. Bostic,* 371 F.3d 865, 872–73 (6th Cir. 2004). Under that standard, "a defendant must show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

### 2. *Discussion*

"For a sentence to be procedurally reasonable, 'a district court must explain its reasoning to a sufficient degree to allow for meaningful appellate review.'" *United States v. Zobel*, 696 F.3d

558, 566 (6th Cir. 2012) (quoting *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007)). A court that imposes a sentence outside the Guidelines range is required to state "the specific reason" for the imposition of its variance. 18 U.S.C. § 3553(c)(2); *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008). Reversible procedural error is committed where a court "fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall,* 552 U.S. at 51.

Ross contends that the sentence imposed by the district court was not procedurally reasonable because the court insufficiently explained its decision to vary upward from the Guidelines range by 15 months. In particular, he contends that the court's written statement of reasons was inadequate.

The following three boxes are checked on the written statement of reasons: (1) "To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))," (2) "To afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))," and (3) "To protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))." A short statement is also included: "The court varied upward to a sentence of 120 months. Defendant was just released from prison and almost immediately began to see[k] fentanyl. Nothing deters this defendant. Defendant was on supervised release in case #4:14CR148 when this conduct occurred."

This written statement of reasons, which includes the checked boxes and the short summary, likely reaches the requisite level of specificity. *See United States v. Feinman*, 930 F.2d 495, 501 (6th Cir. 1991) (holding that the specificity requirement is satisfied by "a short clear written statement") (citation omitted); *cf. Zobel*, 696 F.3d at 566–67 (finding that "merely check[ing] off a box" would result in remand). But we need not determine whether the written

explanation is alone sufficient. Although we prefer that the reasoning for an upward variance be reduced to writing, oral explanations can compensate for any deficiency in the written explanation. *Zobel*, 696 F.3d at 566–67. The district court's oral explanations here are more than adequate.

At the sentencing hearing, the district court methodically explained the various factors driving its sentencing decision. The court first touched on the fact that Ross was raised in a "positive home environment," but suffers from learning disabilities, mental-health problems, and addiction. It also recognized Ross's need for drug and alcohol treatment while incarcerated and compared Ross's 120-month sentence with the average 132-month sentences of similarly situated defendants.

The district court then emphasized the circumstances and seriousness of the instant offense, commenting both on Ross's knowledge that he was purchasing and distributing counterfeit pain pills across state lines and on fentanyl's harm to the community. It also highlighted Ross's recidivism and his continuing danger to the public by noting that not only did Ross have a long history of violent offenses, but that the instant offense occurred just two months after Ross was released from confinement for his previous offense. "[I]t is certainly relevant," said the court, that an individual who just "started supervision . . . has the wherewithal and the ability to, once again, reconnect with drug traffickers in California, to bring fentanyl to this state . . . . [That's] why [he] clearly is a danger to the community, clearly has to be deterred." The court further pointed out that Ross was caught with contraband pills while awaiting sentencing—a violation reminiscent of a previous violation where Ross was found, while incarcerated, with pills stored in his rectal cavity.

We therefore conclude that, in detailing Ross's serious offense, recidivism risk, and threat to the community, the district court explained its upward variance from the Guidelines range with sufficient specificity to easily survive a procedural-reasonableness challenge on plain-error review.

*See Zobel*, 696 F.3d at 567–68 (finding the above-Guidelines sentence to be procedurally reasonable where the district court considered, in its oral explanation, the defendant's characteristics and need for treatment, and emphasized the defendant's risk of recidivism and his threat to the community) (collecting similar cases).

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.